**ALANA LEE MCMAINS**
California State Bar No. 285942
**MCMAINS LAW, APC**
185 W. F St. #100-R
San Diego, California 92101
Telephone: (619) 310-5421
alana@mcmainslaw.com

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN BARBOSA-AYALA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, Adelanto ICE Processing Center, MARKWAYNE MULLIN, Secretary of the Department of Homeland Security;<br><br>Respondents. | Civil Case No.: 26-cv-6312<br><br>**Petition for a Writ of Habeas Corpus** |

## INTRODUCTION

Kevin Barbosa-Ayala drove onto a military base for his job. Although he had a work permit, the base contacted Immigration and Customs Enforcement ("ICE"), who promptly came and arrested Mr. Barbosa-Ayala. ICE lacked any warrant to arrest him, either administrative or judicial. This case asks whether the government had the legal authority to arrest him. It did not.

Congress created two routes for an interior immigration arrest. Section 1226(a) permits arrest "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Section 1357(a)(2) permits a warrantless arrest only when the officer has probable cause both that the person is unlawfully present *and* that the person "is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2).

The regulation at 8 C.F.R. § 287.3 does not add a third route. It governs the disposition of a person "arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act"—i.e., § 1357(a)(2). 8 C.F.R. § 287.3(a). The regulation, therefore, applies only when an immigration agent has 1) probable cause that a person is unlawfully present *and* 2) probable cause they are likely to escape. It does not provide an officer with forty-eight hours of authority to arrest a person anytime the officer suspects unlawful presence. And a later-issued warrant cannot retroactively supply the probable cause of unlawful presence and escape that § 1357(a)(2) requires at the time of arrest.

This petition requires the Court to decide the threshold question of whether Mr. Barbosa-Ayala's arrest was lawful. Respondents have produced no warrant issued before the arrest authorizing it under § 1226(a). Nor have they shown that the arresting officer had probable cause under § 1357(a)(2) to believe that Mr. Barbosa-Ayala was unlawfully present and likely to escape. Because neither statutory route authorized Mr. Barbosa-Ayala's arrest, and a bond hearing does not cure an unlawful arrest, this Court should grant the writ and order his immediate release. However, if this Court disagrees, it should at least order that

Mr. Barbosa-Ayala receive a bond hearing under *Rodriguez Vazquez v. Bostock*, 25-6842, --- F. 4th ----, 2026 WL 2196424 (9th Cir. 2026).

## STATEMENT OF FACTS

Mr. Barbosa-Ayala is a citizen of Colombia. In approximately 2022, he entered the United States without inspection. He has been in the United States ever since, living in Victorville, California. Mr. Barbosa-Ayala has no criminal history.

On October 22, 2026, Mr. Barbosa-Ayala drove to the George Air Force Base for a job. When he arrived, he showed them his work permit. They called ICE, who came to the base and arrested Mr. Barbosa-Ayala.

ICE never showed Mr. Barbosa-Ayala a warrant or any other document relating to his arrest. He has been in custody ever since, but he has not received a bond hearing.

## CLAIMS FOR RELIEF

### I. Because Mr. Barbosa-Ayala's warrantless arrest was not statutorily authorized, this Court should order his immediate release.

#### A. Respondents must identify the lawful authority that existed to justify Mr. Barbosa-Ayala's arrest.

"The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, the agency "can exercise discretion to issue a warrant for an alien's arrest and detention" under 8 U.S.C. § 1226(a). *Id.* This authority permits arrest "*[o]n* a warrant issued by the Attorney General"—i.e., a warrant in existence at the time of the arrest. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that § 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General *leading to the alien's arrest*") (emphasis added); *Rodriguez Vazquez v. Bostock*, __ F.4th __, No. 25-6842, 2026 WL 2196424, at *10 (9th Cir. July 30, 2026) (noting that the noncitizen was "apprehended pursuant to a

warrant" under § 1226(a)). Such warrants must be "executed by federal officers who have received training in the enforcement of immigration law." *Arizona*, 567 U.S. at 408.

But "[i]f no federal warrant has been issued, those officers have more limited authority." *Id*. Section 1357(a)(2) permits a warrantless arrest *only* when the officer has probable cause both that the person 1) is unlawfully present and 2) is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2).

Here, there is no indication that a warrant existed before Mr. Barbosa-Ayala's arrest that would have authorized it under § 1226(a). Without a valid warrant, Respondents had "more limited authority" to make an arrest. *Arizona*, 567 U.S. at 408. Specifically, the officers had to have "reason to believe" both that Mr. Barbosa-Ayala was present unlawfully *and* was "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Respondents cannot make this showing on the facts here.

The Ninth Circuit declared that the phrase "has reason to believe" in § 1357(a)(2) has been "equated with the constitutional requirement of probable cause." *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980) (citing *United States v. Cantu*, 519 F.2d 494, 496 (7th Cir. 1975), and *Au Yi Lau v. Immigration and Naturalization Service*, 445 F.2d 217, 222 (D.C. Cir. 1971)). While "the lack of documentation or other admission of illegal presence may be some indication of illegal entry, it does not, without more, provide probable cause" of unlawful presence. *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995).

The factual circumstances in *Mountain High* also illustrate what the escape requirement demands. "When questioned by INS agents at the factory, [the workers] claimed lawful immigration status but stated that they were not then in possession of their green cards." *Mountain High*, 51 F.3d at 218. "All were taken to an INS detention center while their status was checked." *Id.* Despite the

workers' inability to produce their immigration documents when questioned, the Ninth Circuit concluded that "the plain language of 8 U.S.C. § 1357(a)(2) . . . forecloses the possibility of a permissible civil arrest under these circumstances" because "the INS did not allege nor do appellants concede the existence of grounds for a reasonable belief that they were particularly likely to escape." *Id.*

Other courts have likewise rejected the proposition that evidence of unlawful status supplies the independently required probable cause of escape. In *Escobar Molina v. U.S. Department of Homeland Security*, for instance, the district court collected decisions rejecting the conflation of unlawful status and likelihood of escape. 811 F. Supp. 3d 1, 31–32 (D.D.C. 2025). In one case, the court concluded that ICE officers lacked "'reason to believe' [the individual] posed a risk of escape" when the person admitted that he "was born in Mexico and did not have any documentation that would allow him to reside in the United States." *Id.* at 31–32 (quoting *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 889–90 (S.D. Ohio 2016)). Another case concluded that an admission regarding immigration status "provided probable cause for the first half of what § 1357(a)(2) demands," but "there is, however, no evidence that ICE or any other immigration officer had probable cause to believe that [the person] was 'likely to escape before a warrant can be obtained for his arrest,' the second half of what is needed before a warrantless arrest under § 1357(a)(2) is lawful." *Id.* at 49–50 (quoting *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 945 (D. Minn. 2017)).

As these cases show, probable cause of unlawful presence does not establish probable cause of likely escape. Rather, escape requires a more immediate indication of flight. For example, in *Meza-Campos*, the Ninth Circuit found the escape predicate satisfied based on objective circumstances known to the officer at the time of arrest, such as the fact that the person was "extremely nervous," was "looking around to the left and right past me," and appeared to be "looking for an opportunity to run." *United States v. Meza-Campos*, 500 F.2d 33,

34 (9th Cir. 1974). The Ninth Circuit concluded that those circumstances supported the officer's "reason to believe" that, "if not immediately arrested, the appellant was likely to escape." *Id.*

As *Meza-Campos* indicates, any escape determination must be individualized and made at the time of the arrest. In *Ixchop-Perez v. Barr*, "[n]othing in the record establish[ed] that Ixchop . . . was a flight risk," nor did the record "suggest that the arresting officers even considered whether Ixchop was a flight risk or whether a warrant was required." 821 F. App'x 690, 694 (9th Cir. 2020). The Ninth Circuit rejected reliance on immigration status because "the regulation requires not only that the arrestee be in the country without authorization, but also a separate determination of flight risk." *Id.*

Here, there is no indication that ICE had a warrant when it took Mr. Barbosa-Ayala into custody. Thus, § 1226(a) could not authorize his arrest. Accordingly, Respondents must justify the arrest under § 1357(a)(2) and show probable cause that he was 1) unlawfully present in the U.S. and 2) likely to escape before they could obtain a warrant. But even assuming something that Mr. Barbosa-Ayala said provided probable cause of unlawful presence, Respondents have not shown probable cause that he was likely to escape.

Mr. Barbosa-Ayala's circumstances resemble the facts in *Mountain High*, not *Meza-Campos*. The *Mountain High* workers were encountered at their workplace, answered immigration officers' questions, and could not produce their green cards. 51 F.3d at 218. Mr. Barbosa-Ayala likewise was engaged in ordinary movement through daily life. He was fully cooperative with the authorities. As in *Mountain High*, those circumstances do not themselves provide "grounds for a reasonable belief that [he was] particularly likely to escape." 51 F.3d at 218. Nothing alleged here resembles an "extremely nervous" person "looking for an opportunity to run," as in *Meza-Campos*. 500 F.2d at 34.

More fundamentally, unlawful presence cannot itself mean that a person is

"likely to escape." *Escobar Molina* expressly rejected that equation: "Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by . . . § 1357(a)(2) meaningless." 811 F. Supp. 3d at 31–32 (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016)). The court separately described individuals arrested while traveling to work, shopping, or otherwise "going about unavoidable, lawful activities of daily life." *Id.* at 34. Ordinary movement through daily life is therefore not itself the particularized escape risk that § 1357(a)(2) requires.

Here, the statute required either a warrant at the time of Mr. Barbosa-Ayala's arrest under § 1226(a) or probable cause of unlawful presence and escape under § 1357(a)(2). Respondents have shown neither. Accordingly, they lacked the statutory authority to arrest Mr. Barbosa-Ayala.

### B. The regulation at 8 C.F.R. § 287.3 governs processing after a lawful § 1357(a)(2) arrest but cannot independently authorize an arrest.

Several regulations in 8 C.F.R. § 287 implement the narrow warrantless arrest authority in § 1357(a)(2). One of these regulations states that officials must decide "within 48 hours of the arrest" whether the person will remain in custody or be released and whether a Notice to Appear and warrant of arrest "will be issued." 8 C.F.R. § 287.3(d). But some district court orders have misinterpreted this regulation as providing freestanding authority for *any* warrantless arrest without the probable cause § 1357(a)(2) requires. *See Garcia-Juarez v. Blanche*, No. 3:26-cv-03007-LL-DEB, slip op. at 3 (S.D. Cal. June 30, 2026). This reading is incorrect.

First, the regulatory text shows that § 287.3(d) is subject to § 1357(a)(2)'s probable cause limitations. Section 287.3 is titled "Disposition of cases of aliens arrested without warrant." 8 C.F.R. § 287.3. Subsection (a) applies to a person

"arrested without a warrant of arrest *under the authority contained in section 287(a)(2)* of the Act." *Id.* (emphasis added). Section 287(a)(2) of the Act is 8 U.S.C. § 1357(a)(2). The regulation therefore applies after an officer invokes the statutory warrantless-arrest authority granted in § 1357(a)(2)—it does not itself create that authority.

After a lawful warrantless arrest under § 1357(a)(2), § 287.3(d) requires DHS, ordinarily within 48 hours, to determine whether to release the noncitizen or continue custody and whether to issue a notice to appear and warrant of arrest. 8 C.F.R. § 287.3(d); *Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180, 183 (D. Me. 2026) (explaining that, "in the case of continued custody," a warrant issues post hoc). *Matute Garcia* reads the regulation the same way: "§ 287.3(d) provides the government with 48 hours to issue a warrant if it determines that the noncitizen will remain in custody." *Matute Garcia v. LaRose*, No. 26-cv-4075-GPC(SBC), 2026 BL 291370, at *2 (S.D. Cal. July 31, 2026). The warrant contemplated by § 287.3(d), therefore, concerns *continued custody after* a warrantless arrest. It does not *retroactively supply* the authority required to make that arrest in the first place.

Some judges have misinterpreted the 48-hour rule in § 287.3(d) as providing retroactive probable cause for a warrantless § 1357(a)(2) arrest. *See Garcia-Juarez v. Blanche*, No. 3:26-cv-03007-LL-DEB, slip op. at 3 (S.D. Cal. June 30, 2026) ("Not only does 8 U.S.C. § 1357(a)(2) authorize warrantless arrests but 8 C.F.R. § 287.3(d) also provides the government 48 hours to issue a warrant if it determines that the noncitizen will remain in custody."). This incorrectly allows a § 287.3(d) warrant issued to justify *prospective* detention to function as a "cure" for the absence of pre-arrest probable cause under § 1357(a)(2).

But courts have properly distinguished the § 1357(a)(2) probable cause requirements from § 287.3(d)'s continued custody determination, concluding that

"a post hoc warrant does not permit detention that arose from an unlawful warrantless arrest." *Quezada-Estrada v. Lyons*, 2026 WL 1361880, at *5 (D. Colo. May 15, 2026). In other words, "[a]n arrest cannot be justified after the fact." *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1158, 1172 (D. Or. 2026). *Alves* confirms this distinction: even though a warrant "may issue after the fact of arrest," the absence of a pre-arrest warrant and an individualized escape determination calls the legality of "the initial arrest" into question. *Alves v. Stamper*, No. 2:26-cv-00318-SDN, 2026 WL 234172, at *4–5 (D. Me. June 23, 2026).

To the extent § 287.3 permits issuance of a post-arrest warrant, it governs only what may occur after an independently authorized arrest; it cannot enlarge the arrest authority Congress granted in § 1226(a) and § 1357(a)(2). As the Supreme Court recently held, the role of reviewing courts is to "independently interpret the statute and effectuate the will of Congress subject to constitutional limits" *without* deference to the agency. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). *See also Romero v. Immigr. & Naturalization Serv.*, 39 F.3d 977, 979–81 (9th Cir. 1994) (invalidating an INS regulation that exceeded the Attorney General's statutory authority and conflicted with the statutory scheme). Thus, the regulations can only interpret the authority § 1226(a) and § 1357(a)(2) gave immigration officials—it cannot authorize them to arrest first and supply the missing warrant or escape predicate later.

**C. Immediate release is the appropriate habeas remedy for Mr. Barbosa-Ayala's unauthorized arrest.**

Mr. Barbosa-Ayala's petition challenges the legal authority for his present custody and seeks release. That request falls within the historic core of habeas, which "provided a means of contesting the lawfulness of restraint and securing release." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117, 123 (2020). By contrast, the noncitizen in *Thuraissigiam* sought "vacatur of his

removal order" and a new opportunity to "to apply for asylum and other relief from removal." *Id*. at 117–18. Because the noncitizen "did not ask to be released" or contest the lawfulness of his detention, his petition "did not call for traditional habeas relief." *Id*. at 118.

Moreover, a bond hearing is not the appropriate remedy for a warrant violation because it cannot restore the process Mr. Barbosa-Ayala was denied at his arrest. For instance, the district court in *Romero-Perez v. Blanche* rejected a post-hoc bond hearing where the Department produced an unsigned I-200 and no evidence of an initial custody determination. No. 2:26-cv-01708-RFB-BNW, 2026 WL 1724752, at *4-5 (D. Nev. June 15, 2026). The court explained that those procedures exist to prevent unjustified detention in the first instance. *Id.* at *4.

*Okeke* reached the same conclusion after finding the arrest unlawful. It held that downstream custody procedures were irrelevant because the defective arrest never triggered lawful detention authority under § 1226. *Okeke v. Maldonado*, No. 26-cv-2714 (PKC), 2026 WL 2056904, at *6 (E.D.N.Y. July 16, 2026). The court ordered immediate release. *Id.* at *6–7.

Courts within this Circuit have likewise ordered release when the Department lacked a valid warrant and could not establish § 1357 authority. *See Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *6–7 (C.D. Cal. June 10, 2026). This Court itself has ordered release when later proceedings could not prevent the liberty deprivation that had already occurred. *See Valle v. Mullin*, 26-cv-3450-LL-GC (S.D. Cal. July 17, 2026); *see also Gregorio v. LaRose*, No. 3:26-cv-03918-RBM-SBC, 2026 WL 2059095, at *2 (S.D. Cal. July 16, 2026) (same).

This case presents the same remedial defect. A bond hearing would decide whether Mr. Barbosa-Ayala's detention should continue. It would not remedy the lack of authority for the arrest that produced his detention. "Habeas is at its core a

remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## II. If this Court disagrees, it should at least order that Mr. Barbosa-Ayala receive a bond hearing under the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*.

It is undisputed that Mr. Barbosa-Ayala was present in the United States when he was arrested on October 22, 2026. Until recently, Respondents relied on the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), to argue that noncitizens like Mr. Barbosa-Ayala should be subject to mandatory detention under § 1225.

But the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock,* 25-6842, --- F. 4th ----, 2026 WL 2196424 (9th Cir. 2026), rejected that interpretation. In that opinion, the court held that "unadmitted [noncitizens] entering the United States at the border [are subject] to § 1225(b)(2)(A), and unadmitted [noncitizens] present in the interior of the country [are subject] to § 1226." *Id.* at *26. Because Mr. Barbosa-Ayala is a noncitizen present inside the United States, he is subject to detention under § 1226 and is, at the very least, entitled to a bond hearing.

However, some courts have held that immediate release, rather than a bond hearing, is the most appropriate remedy. That is because "a post-deprivation hearing cannot serve as an adequate procedural safeguard [when] it is after the fact and cannot prevent an erroneous deprivation of liberty." *Gonzales Valencia v. Warden*, 26-cv-4284-RBM-GC, 2026 WL 2297958, at *2 (S.D. Cal. Aug. 10, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)); *Truong v. Mullin*, 26-cv-4204-RBM-MMP, 2026 WL 2280773, at *2 (S.D. Cal. Aug. 7, 2026) (same); *Garibay v. Mullin,* 26-cv-3786-JO-AHG, ECF 9 (S.D. Cal. July 24, 2026) ("While § 1226 ordinarily provides for a bond hearing

after detention, a pre-deprivation hearing is the more appropriate remedy for individuals like Petitioner who have already been subjected to unconstitutional detention.”); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, (E.D. Cal. 2025) (finding petitioner was wrongfully denied a bond hearing under § 1226(a), granting a preliminary injunction, and ordering release); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (determining that the process provided to a petitioner post-detention does not cure the detention that has already occurred).

Therefore, since Mr. Barbosa-Ayala is a noncitizen present inside the United States, he is subject to detention under § 1226. And because Mr. Barbosa-Ayala has been subject to erroneous detention since his arrest, this Court should order his immediate release. At the very least, though, Mr. Barbosa-Ayala’s detention pursuant to § 1226(a) entitles him to a bond hearing.

**Prayer for Relief**

This Court should grant the petition and order Respondents to release Mr. Barbosa-Ayala immediately to the conditions that existed before the arrest. But if this Court disagrees, it should at least order that Mr. Barbosa-Ayala receive a bond hearing under *Rodriguez Vazquez v. Bostock*.

Respectfully submitted,

Dated: October 25, 2026

*s/ Alana Lee McMains*

Alana Lee McMains
MCMAINS LAW, APC
Attorney for Petitioner

**28 U.S.C. § 2242 VERIFICATION STATEMENT**

I am submitting this verification on behalf of the Petitioner because I am his attorney. Petitioner is currently incarcerated at the Adelanto ICE Detention Center and there are neither video, phone, or in-person visits available until November 1, 2026. Thus, I have prepared this petition with facts gathered while speaking to Petitioner's U.S. citizen wife, who has been in communication with him since his arrest and has served as an intermediary between Petitioner and me. Based on those discussions, I hereby verify under penalty of perjury under the laws of the United States and the State of California that the statements made in this petition are true and correct to the best of my knowledge, information, and belief. I have an appointment to speak with Petitioner on November 1, and after that meeting, I will supplement the record with his declaration if necessary. However, due to the time-sensitive nature of this petition, it was necessary to file immediately.

Dated: October 25, 2026

*s/ Alana Lee McMains*
Alana Lee McMains
MCMAINS LAW, APC